[No. 3427-1. Division One. June 9, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT CALHOUN, *Appellant*.

*Culp, Dwyer, Guterson & Grader* and *Murray B. Guterson,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Gerald M. Lorentson, Deputy,* for respondent.

WALTERSKIRCHEN, J.*—Robert Calhoun appeals from a judgment and sentence entered upon a jury verdict finding him guilty of one count of robbery committed while armed with a deadly weapon. Appellant primarily contends that the trial court erred

1. By refusing to give defendant's proposed cautionary instruction on accomplice testimony,
2. By admitting the testimony of witnesses Tyson and Mattson about a planned robbery in California,
3. By admitting the hearsay testimony of the witness McCrary,
4. By admitting the hearsay testimony of the witness Tyson,
5. By admitting into evidence the witness McCrary's statement to the police.

Based upon these claimed errors, appellant argues that the trial court erred in entering judgment and sentence and in denying his motion for new trial.

---

*Judge F. A. Walterskirchen is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

Appellant Calhoun was charged with three counts of armed robbery. The jury returned a verdict of not guilty as to counts 1 and 2 and a verdict of guilty as to count 3. Only the testimony of admitted accomplices—Bennie Tyson and Edward Mattson—linked Calhoun to the crimes charged in counts 1 and 2. In prosecuting count 3, the State relied upon the testimony of Bennie Tyson, who did not participate in the actual crime, and Douglas McCrary, who participated in the robbery and, therefore, was a full-fledged accomplice. The State's theory was that Calhoun, who was staying in the home of one Margaret Smith, supplied the gun used by McCrary and Robert Coleman in the robbery and, subsequently, permitted McCrary and Coleman to take refuge in the Smith house where all three divided the proceeds of the crime. Calhoun and Margaret Smith each testified that Calhoun placed the gun in Mrs. Smith's bedroom on the evening in question, which was consistent with the testimony of the accomplices McCrary and Tyson concerning the presence of the gun in the Smith residence, but the defense contention was that Calhoun was merely keeping the gun for Tyson.

At the conclusion of the evidence, appellant requested the court to give his proposed instruction No. 3, which states:

> You are instructed that one who knowingly acts with someone else in the commission of a crime and thereafter admits his own participation is an accomplice.
> You are further instructed that the testimony of an accomplice comes from a polluted source, and that while the rule of law is that a defendant may be convicted on the uncorroborated testimony of an accomplice, where the honest judgment is satisfied beyond a reasonable doubt, still the jury should act upon such testimony with great care and caution and subject it to careful examination in the light of other evidence in the case. The jury should not convict upon such testimony alone unless after careful examination of it they are satisfied beyond all reasonable doubt of its truth.

The trial court stated:

> The Court feels that you have enough other instruc-

tions that you can fully and adequately argue that. It certainly gives you lead to do so.

Appellant argues that the trial court erred in thus refusing to give the quoted instruction because of the rule stated as follows in *State v. Carothers*, 84 Wn.2d 256, 269, 525 P.2d 731 (1974):

> [A] cautionary instruction is mandatory if the prosecution relies upon the testimony of an accomplice. A conviction may rest solely upon the uncorroborated testimony of an accomplice *only* if the jury has been sufficiently cautioned by the court to subject the accomplice's testimony to careful examination and to regard it with great care and caution.

(Citations omitted.) The State points out that Calhoun was acquitted of counts 1 and 2 despite the testimony of accomplices Tyson and Mattson, and argues that, inasmuch as Tyson was not an accomplice to the crime charged in count 3, his testimony as to that count required no corroboration. The State concludes that Tyson's testimony, together with that of Margaret Smith, who was not an accomplice, constituted sufficient corroboration of the testimony of the accomplice McCrary such that no cautionary instruction was required.

■ We do not agree. In *State v. Gross*, 31 Wn.2d 202, 216-17, 196 P.2d 297 (1948), it is stated:

> It appears to be well-established law in this state that, while a defendant may be convicted on the uncorroborated testimony of an accomplice, provided that all the evidence and circumstances in the case satisfy the honest judgment beyond a reasonable doubt of the defendant's guilt, nevertheless the trial court should carefully caution the jury, in such cases, in the matter of weighing uncorroborated testimony, and should warn it against a conviction on such testimony; and the failure to give such instruction on request, where the testimony is uncorroborated, may constitute reversible error.
>
> It is to be noted that this rule requiring the giving of a cautionary instruction applies only where the testimony of an accomplice is uncorroborated, and not where the

testimony of such witness is corroborated by other evidence in the case.

It is also the generally established rule that, while the corroborating evidence must be independent of the testimony of the accomplice, *it is sufficient if it fairly tends to connect the accused with the commission of the crime charged*; and it is not necessary that the accomplice be corroborated in every part of his testimony.

(Italics ours. Citations omitted.)

In this case, at the time instructions were given to the jury, the only evidence against Calhoun as to counts 1 and 2 came from the uncorroborated testimony of accomplices Tyson and Mattson. As to count 3, the only incriminating evidence, exclusive of the testimony of Margaret Smith and of the appellant that he had stored a gun in her house, came from McCrary and Tyson. We cannot accept the State's contention that appellant's acquittal as to counts 1 and 2 permits us to review the need for a cautionary accomplice instruction as if the defendant had only been charged with count 3. Tyson, Mattson and McCrary were all accomplices to the crimes charged in the three counts facing the appellant when the jury commenced its deliberations. Evidence concerning counts 1 and 2 was not removed from the case when the jury agreed to the not guilty verdict as to counts 1 and 2. Thus, we can only speculate as to the extent such evidence may have affected the guilty verdict on count 3. Under such circumstances, the appellant was entitled to a cautionary instruction unless the accomplice testimony was sufficiently corroborated.

▮ The only such evidence which is corroborated is the fact that appellant Calhoun had a gun and holster in a paper sack in the bedroom of the witness Smith's house for a short period of time in December. We are not persuaded that this evidence "fairly tends to connect the accused with the commission of the crime charged," as required by *State v. Gross*, at page 216. Without the testimony of accomplices Tyson or McCrary, there is no connection between the defendant and the crime charged. Therefore, we conclude the

trial court erred in refusing to give a cautionary instruction as to the accomplice testimony.[1]

We are unable to say the error was harmless so a new trial must be directed on that ground alone; however, to minimize the probability of error on retrial, we deem it necessary to discuss appellant's remaining claims of error.

Appellant's second assignment of error concerns the admission of testimony from the witnesses Tyson and Mattson concerning alleged plans to commit a robbery in California, a crime not charged in this information. The State recognizes the applicable rule is set forth in *State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971), and *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952). As stated in *Mack* at page 21:

> A defendant must be tried for the offenses charged in the indictment. Evidence of unrelated crimes may not be admitted, except where such evidence shows motive, intent, absence of accident or mistake, a common scheme or plan, identity, or is somehow relevant and necessary to prove an essential ingredient of the crime charged.

(Citations omitted.) As it did during trial, the State on appeal argues that the challenged testimony was offered to establish a common scheme or plan.

A common scheme or plan means more than commission of two or more similar crimes by the same person or persons. *See State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971). In *State v. Goebel, supra,* the state Supreme Court recognized the relevancy of "common scheme or plan" testimony which indicated that a noncharged crime was committed in a manner which resembled the modus operandi of the charged offenses in four distinct respects. No such evidence was introduced in the instant case. A search of the

---

[1] In its brief, the State contends that the wording "comes from a polluted source" contained in appellant's proposed instruction No. 3 constitutes a comment on the evidence. Although we do not adopt the language of the requested instruction as a model, we need not consider the State's contention because it proposed no alternative to the trial court and, in argument, raises the question for the first time on appeal. *See State v. Rockwell*, 12 Wn. App. 292, 529 P.2d 891 (1974).

record shows that the only element common between the planned California robbery and the three robberies charged in the information is that all were robberies and that each involved the use of a gun or guns.

The State also argues that the offered testimony was necessary to establish the identity of the gun and to prove that the crime was committed while armed with a firearm. Such was not the case. McCrary, who used the gun in the count 3 robbery, was present in court and testified that he used the gun and afterwards took it to the Smith house where he gave it to the appellant. Tyson also testified as to the identity of the gun. In any event, a considerable portion of the testimony concerning the California proposed robbery was hearsay and inadmissible on that basis. For the reasons indicated, we conclude that the admission of the evidence concerning the planned California robbery constituted error.

■ Appellant's third assignment of error relates to hearsay testimony of witness McCrary admitted over appellant's objections. The State seeks to justify the admission of such testimony on the theory that it was not offered for the truth of statement but to establish the circumstances surrounding the making of the statements and the conduct of the witness to whom the statements were made. The State also seeks to justify the statements as "operative facts." *See* 5 R. Meisenholder, Wash. Prac. §§ 381-83 (1965). Examination of the testimony in question, however, reveals that it consists substantially of statements by McCrary concerning incidents related to him by the accomplice Coleman which involved the planning for the robbery and recounted statements allegedly made by appellant as to his participation therein. To the extent that such testimony consisted of out-of-court statements offered for their truth, the trial court erred in permitting it. On retrial, the court's particular scrutiny will be required to determine whether any portion of the offered testimony is admissible under any recognized exception to the hearsay rule.

Appellant's fourth assignment of error relates to the testimony of the witness Tyson that:

1. The witness had heard of other confederates agreeing to testify against him.
2. The prosecutor told him that the State had statements of other confederates.
3. The prosecutor told him that he would have to admit his guilt and testify against his confederates.
4. The prosecutor told him that his parole would be revoked if the information he supplied was not true.
5. He had heard that if he told the truth, he would be reinstated on his parole rather than sent to the penitentiary.

 This portion of the evidence, complained of as being improperly admitted, was hearsay, but it had a bearing on the credibility of the witness. "The interest or bias of a witness may be shown and considered as bearing on the credit which should be accorded to his testimony." 98 C.J.S. *Witnesses* § 539, at 476 (1957). "The interest of an accomplice in testifying for the state . . . may be shown . . ." 98 C.J.S. *Witnesses* § 543, at 485 (1957). In *State v. Wilson*, 70 Wn.2d 638, 642, 424 P.2d 650 (1967), the court considering the question of the latitude to be allowed in the cross-examination of an accomplice testifying on behalf of the State said:

The rule is well settled that great latitude should be allowed in the cross-examination of an accomplice who testifies for the state in the trial of his associates.

In *State v. Tate*, 2 Wn. App. 241, 247, 469 P.2d 999 (1970), where a similar question was being discussed, the court said:

Another compelling reason exists for permitting impeachment of the witness Jennings by evidence of her plea of guilty to an unrelated offense. She had not yet been sentenced. Her plea of guilty was admissible not only to attack her credibility because she had been convicted of a felony, *but also to establish motive, bias, self-interest and hope for leniency.*

(Italics ours.) Inasmuch as the witness may be cross-exam-

ined to establish motive, bias, self-interest and hope for leniency, we see no reason why the State may not in direct examination, subject to the discretion of the court, introduce all aspects of the witness' situation which will tend to affect his credibility. As this court stated in *State v. Johnson*, 12 Wn. App. 548, 558-59, 530 P.2d 662 (1975):

> Defendant contends the court committed prejudicial error by allowing the State to impeach its own witness Martin on redirect examination by showing his bias.
>
> . . .
>
> . . .
>
> . . . It is true that whether a party will be permitted to impeach his witness by evidence of bias is usually treated "as included within the prohibition against impeachment." 3A J. Wigmore, *Evidence* § 901 (Chadbourn rev. ed. 1970). The court may allow such evidence in its discretion. [Citations omitted.] We find no abuse here.

In this case, however, the court allowed the witness to testify that the threat to revoke his parole if he did not tell the truth had, in fact, not been carried out. This amounted to an indirect expression of the opinion of the prosecutor that he believed the witness was truthful. To that extent, the testimony was improper. *State v. Swenson*, 62 Wn.2d 259, 283, 382 P.2d 614 (1963); *State v. Thomas*, 8 Wn.2d 573, 113 P.2d 73 (1941).

Appellant also points out that the prosecutor asked Tyson if he had agreed to take a polygraph examination. This was improper, and appellant argues that the inquiry requires reversal here despite the fact that his objection was sustained and no other reference to the polygraph examination appears in the record. In view of our grant of a new trial, we need not determine this question which we deem unlikely to arise on retrial.

Finally, appellant assigns error to the admission into evidence of exhibit No. 13, a statement given by the witness McCrary to the police the day following his arrest, in which McCrary described his and appellant's participation in the crime charged in count 3. During direct examination, the State asked McCrary, over appellant's objection, to de-

ścribe the circumstances by which the statement was taken and its general subject matter. At the request of the prosecutor, the statement was marked as exhibit 13 and identified. At the same time, the State demanded a copy of a statement taken from the witness McCrary by appellant's counsel after McCrary's arrest and prior to the trial. The statement was produced, marked as exhibit 14 and identified. All of this occurred on direct examination and prior to any attack upon the credibility of the witness and without any suggestion that any of his testimony was a recent fabrication.

On cross-examination, appellant's counsel examined McCrary concerning the statement McCrary had given him (exhibit 14), and then offered it in evidence. It was admitted by the court over the State's objection. There was no question asked that suggested a recent fabrication, but exhibit 14 was admitted into evidence as a prior statement which was inconsistent with the witness' testimony on the witness stand. On redirect examination, the State offered the statement given to the police (exhibit 13) as a prior consistent statement, and the court admitted it over appellant's objection.

■ A prior consistent statement may only be admitted when a witness has been impeached in such a manner as to permit an inference that the in-court testimony is a recent fabrication. In *State v. Pendleton*, 8 Wn. App. 573, 574, 508 P.2d 179 (1973), we held:

A prior consistent statement may be admitted for the purpose of rehabilitating a witness when
(1) his testimony has been assailed
(2) under circumstances implying recent fabrication of his testimony
(3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements. *State v. Pitts*, 62 Wn.2d 294, 296, 382 P.2d 508 (1963).

In this case, as in *Pendleton*, neither condition No. 2 or condition No. 3 are satisfied; consequently, the interroga-

654

tion of the witness concerning exhibit 13, together with its identification and admission into evidence, constitutes error.

The judgment is reversed and the cause remanded for a new trial.

WILLIAMS, C.J., and SWANSON, J., concur.