[No. 1218-3.    Division Three.    July 15, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD ANDREW LEE, *Appellant*.

*Vovos & Voermans* and *Mark E. Vovos*, for appellant.

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

MUNSON, J.—Richard A. Lee appeals from a jury conviction of first-degree murder and robbery arising from a homicide occurring during the commission of, or in the withdrawing from, a robbery. Defendant alleges the following assignments of error:

1. The court failed to grant a new trial based upon the affidavit of a witness who recanted her testimony.

2. Defendant's right to a speedy trial, pursuant to CrR 3.3, was violated when the State's motion for a continuance was granted on a basis not provided in the rule.

3. The taking of a deposition by the State of its witness, violated the provision of CrR 4.6.

4. The trial court refused to grant a change of venue pursuant to CrR 5.2(b).

5. The court refused to give defendant's proposed instruction No. 31, *i.e.*, that if the killing was in the furtherance of a felony-sodomy, defendant was not guilty of the charge of robbery-murder.

6. The court refused a cautionary instruction on the credibility of an accomplice witness.

We find each of the defendant's contentions to be without merit.

FACTS: On the evening of June 12, 1973, defendant met with Ronald Rhodes, Raynard DelCambre and Paul Staley at Rhodes' home. After some discussion concerning the decedent, Mr. Gunderson, owing Staley and the defendant some money, defendant drove them to the Gunderson home. Defendant gave his .22 rifle to DelCambre and instructed him in its operation; Rhodes had another rifle. Mr. and Mrs. Gunderson were awakened when DelCambre fired a shot through their bedroom window. DelCambre and Rhodes kicked down the back door, entered the Gunderson

bedroom, told Mr. Gunderson to "get under the [bed] covers" and ordered Mrs. Gunderson into a closet. Thereafter, money, marijuana and various items of personal property were removed from the Gunderson home and Mrs. Gunderson was forced to commit acts of oral sodomy upon Del-Cambre and Rhodes. While confined in the closet, Mrs. Gunderson heard a "pop"; she later discovered her husband mortally wounded.

ASSIGNMENTS OF ERROR:

*1. Recanting of State's witness.*

Defendant contends the trial court erred in failing to grant a new trial based upon the affidavit of his sister, Diane Lee, recanting her testimony. She had testified that the defendant was at her home in the company of Rhodes, DelCambre and Staley on the night of the murder; that these four men left together and returned together in the early morning of June 13; and that on their return they had items of personal property which they divided among themselves. On April 22, 1974, Diane Lee signed an affidavit stating that she had lied in her statement to the police and perjured herself at trial.

Disposition of a motion for new trial, based upon the recanting of testimony by a witness, is within the sound discretion of the trial court. *State v. Shaffer*, 72 Wn.2d 630, 635, 434 P.2d 591 (1967); *State v. Elliott*, 6 Wn.2d 393, 107 P.2d 927 (1940).

In *State v. Wynn*, 178 Wash. 287, 289, 34 P.2d 900 (1934), when confronted with testimony of a recanting witness, the court stated:

> When the trial court, after careful consideration, has rejected such testimony, or has determined that it is of doubtful or insignificant value, its action will not be lightly set aside by an appellate court.

The trial judge in reviewing Diane Lee's affidavit, stated:

> I'm going to deny this motion for a new trial and I'm going to tell you why. First, I don't think that the testi-

mony of Diane Lee made a particular difference in this case. She was here, obviously under stress.[1]

We agree with the trial court. Had Diane Lee testified as she stated in her post-trial affidavit, the result of the trial would not have been changed. *State v. Peele*, 67 Wn.2d 724, 409 P.2d 663 (1966). We find no abuse of discretion.

2. *Alleged violation of CrR 3.3.*

Defendant contends the trial court violated the provisions of CrR 3.3 by granting prosecution's motion for a continuance on January 16, 1974. We disagree.

DelCambre and Rhodes were arrested and charged with robbery-murder of Mr. Gunderson and sodomy forced upon Mrs. Gunderson. Subsequently, the sodomy charge was dropped; they pleaded guilty to robbery-murder and were sentenced. They subsequently testified for the State at Staley's trial.

The court granted defendant's request for a continuance on October 18, 1973, setting his trial for January 16, 1974. On that date, the prosecution moved for a continuance when DelCambre and Rhodes refused to testify on behalf of the State. Their refusal, first, was based on the fifth amendment to the United States Constitution; the court would not accept this reason, inasmuch as they had previously pleaded guilty on facts arising out of the same occurrence. They then refused to testify because they feared recrimination while confined in a state penal institution. The court would not accept this reason, found them in contempt, and confined them in the Spokane County Jail until such time as they agreed to testify. The continuance was granted and the trial reset to March 11, 1974, pursuant to CrR 3.3 (e) (2) (ii).[2]

---

[1]When first called by the State, Diane Lee, through counsel, refused to testify, primarily because she did not want to testify against her brother. Other counsel was appointed to represent her. She had testified on behalf of the State in Staley's trial; she apparently was also concerned about the possibility of conflicting testimony. Ultimately, she did testify before the jury as noted above.

[2]"(e) **Continuances.** Continuances or other delays may be granted as follows:

■    The court's granting of a continuance was proper. The assertion of the Fifth Amendment by these witnesses, regardless of the validity of their claim, caused their testimony to be unavailable. *State v. Solomon*, 5 Wn. App. 412, 487 P.2d 643 (1971); *cf. Stone v. State*, 85 Wn.2d 342, 347, 534 P.2d 1022 (1974). The confinement of DelCambre and Rhodes was proper. *United States v. Wilson*, ...... U.S. ......, 44 L. Ed. 2d 186, 95 S. Ct. 1802 (1975). It also provided a reasonable basis to believe they would substitute themselves as witnesses within a reasonable time. No more is required. The validity of this anticipated result was borne out when they testified at the defendant's trial in March 1974.

*State ex rel. Rupert v. Lewis*, 9 Wn. App. 839, 515 P.2d 548 (1973), is not appropros. Here the court did not act sua sponte, but for good cause, upon the prosecuting attorney's motion. There was no abuse of discretion and the defendant was not prejudiced by the continuance.

3.  *Violation of CrR 4.6(a).*[3]

Between the time DelCambre and Rhodes were found in contempt and confined in the Spokane County Jail, and the defendant's trial, DelCambre agreed to testify. The State, pursuant to CrR 4.6(a), asked the court for an order allowing it to take his deposition. The defendant opposed the motion because DelCambre, in custody pursuant to the contempt charge, was capable of attending the trial in person.

---

"...

"(2) On motion of the prosecuting attorney if:

"...

"(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; . . ."

[3]"Upon a showing that a prospective witness may be unable to attend or prevented from attending a trial or hearing or if a witness refuses to discuss the case with either counsel and that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a party and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place."

Defendant contends DelCambre's availability negated application of CrR 4.6(a). We disagree.

█ The essence of a prospective witness' "availability" goes to his testimony, not his physical presence. DelCambre, having refused to testify, caused his testimony to be unavailable. *State v. Solomon, supra.* There was no assurance his testimony would be available at the time of trial. CrR 4.6(a) requires two additional elements: (1) the testimony must be material, and (2) the taking of the deposition must be intended to prevent a failure of justice. DelCambre's testimony met these elements. We find no error.[4]

### 4. Violation of CrR 5.2(b).[5]

Prior to March 18, 1974, but after October 18, 1973, the defendant sought a continuance, or in the alternative, a change of venue, based primarily upon newspaper articles about the trial of his codefendant, Paul Staley. Shortly before March 18, he filed additional articles relating to the contempt proceedings against DelCambre and Rhodes, as well as those relating to Staley's sentencing, and sought a 6-month continuance, or in the alternative, a change of venue; both requests were denied. Because of the excessive pretrial publicity, defendant claims the court erred in denying his latest motion for a change of venue.

█ Obviously, the defendant's motion was partially granted when the trial was continued from January to March 1974. As to the later motion, we stated in *State v. Crudup,* 11 Wn. App. 583, 587, 524 P.2d 479 (1974):

Common criteria or factors generally utilized by courts in determining the propriety of an order granting or

---

[4]During the testimony of DelCambre at trial, the defendant requested portions of the video taped deposition be shown before the jury; his request was granted.

[5]**(b) When Ordered—on Motion of Party.** The court may order a change of venue to any county in the state:

"(1) Upon written agreement of the prosecuting attorney and the defendant.

"(2) Upon motion of the defendant, supported by affidavit that he believes he cannot receive a fair trial in the county where the action is pending."

denying a motion for change of venue based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. Annot., 33 A.L.R.3d 17, 33 (1970). *See also Pretrial Publicity-Fair Trial*, Annot., 10 L. Ed. 2d 1243 (1964).

The defendant has introduced numerous newspaper articles, but has not provided a basis by which this court could consider factors (4), (5), (6), (7) or (9) of the above criteria, nor has he cited authority in support of his contention.

Additionally, at the commencement of trial, the State requested the jury be sequestered; the defendant opposed it; the jury was not sequestered. After the first week of trial, the court did confine the jury because of the volume of argument and colloquy outside the jury's presence. The court was concerned that some of those proceedings might be reported by the news media and, although in violation of their admonition, be discovered by a juror, resulting in a mistrial. Our review fails to reflect any abuse of discretion. *State v. Butler*, 11 Wn. App. 605, 524 P.2d 488 (1974); *State v. Crudup, supra.*

*5. Failure to give instruction No. 31.*

■ a. Defendant's assignment of error is directed with particularity to the last two paragraphs of his proposed instruction, to the effect that, if the jury found the killing was in the furtherance of the felony of sodomy and not robbery, the defendant should be acquitted because he was not charged with that crime. There was no evidence to support a conviction that he had aided and abetted a

sodomy-murder. We find no error in the failure to give the proposed instruction.

■ As noted in *State v. Golladay*, 78 Wn.2d 121, 130, 470 P.2d 191 (1970):

> To sustain a conviction for collateral crime murder, the causal connection between the commission of the collateral crime and the death must be clearly established. 1 Anderson, Wharton's Criminal Law and Procedure § 252, at 544 (1957).

This causal connection has been referred to as within the res gestae of the intended crime. In commenting on the historical background of the felony-murder doctrine, the court in *State v. Suit*, 129 N.J. Super. 336, 344, 323 A.2d 541, 546 (1974), noted:

> The doctrine arose and is premised upon a theory of transferred intent, that is, that one perpetrating or attempting to perpetrate an inherently dangerous felony possesses a malevolent state of mind which the law calls malice. . . .
> It is this intent which transfers into that element of malice necessary to sustain a charge of first-degree murder and is imputed to the person who kills during the felony. Thus, when killing occurs in the commission of a robbery, it is murder in the first degree, even though death was not intended.[6]

*Cf. State v. Whitfield*, 129 Wash. 134, 224 P. 559 (1924).

---

[6]Further, as noted in *State v. Holland*, 261 S.C. 488, 501, 201 S.E.2d 118, 124 (1973):

There was evidence, as is heretofore stated, that the appellants agreed or conspired to commit the crime of grand larceny, which is a felony, and each party is criminally responsible for the acts of his associates or confederates in furtherance or in prosecution of the common purpose for which they combine.

Further, in *State v. Crowe*, 258 S.C. 258, 265, 188 S.E.2d 379, 382 (1972), the court stated:

It is further well settled that, if two or more combine together to commit an unlawful act, such as robbery, and, in the execution of the criminal act, a homicide is committed by one of the actors, as a probable or natural consequence of the acts done in pursuance of the common design, all present participating in the unlawful undertaking are as guilty as the one who committed the fatal act.

As noted in *State v. Rossi*, 132 Conn. 39, 44-45, 42 A.2d 354, 357 (1945):

A combination of two or more persons to commit a crime is, in itself, an additional factor of danger. [Citation omitted.] The fact that the actual killing was not a part of the original design is immaterial.

Here, the court did instruct the jury that there must be a causal connection between the defendant and the one actually committing the basic crime (robbery) during which the homicide occurred.[7]

From the instruction No. 7, the defendant had the opportunity to argue that the killing was a result of the sodomy, as contrasted to the robbery; thus, his client was not guilty.

---

[7] "INSTRUCTION No. 7

"Before you can find the defendant guilty of Murder in the First Degree, as charged in Count I of the Information, you must find from the evidence in this case, beyond a reasonable doubt under the law, as stated to you in these instructions, all of the following elements:

"1. That Ronald Douglas Rhodes or Raynard DelCambre, in the County of Spokane, State of Washington, on or about the 13th day of June, 1973, did shoot Ronald Lee Gunderson, a human being, with a gun loaded with powder and bullets thereby mortally wounding the said Ronald Lee Gunderson;

"2. That as a result of said wounds so inflicted, the said Ronald Lee Gunderson, did on or about the 13th day of June, 1973, die;

"3. That without excuse or justification, the said Ronald Douglas Rhodes or Raynard DelCambre killed said Ronald Lee Gunderson while engaged either in the commission of a robbery, or in an attempt to commit a robbery or in withdrawing from the scene of a robbery;

"4. That the defendant, RICHARD ANDREW LEE, then being, did then and there wilfully and unlawfully aid, counsel, encourage and abet the said Ronald Douglas Rhodes and Raynard DelCambre in the commission of the foregoing acts.

"If the State has failed to establish by the evidence in this case, beyond a reasonable doubt, any one of the foregoing elements, then you must acquit the defendant, RICHARD ANDREW LEE, of the crime of Murder in the First Degree as charged in Count I of the Information.

"On the other hand, if the State has established by the evidence beyond a reasonable doubt all of the foregoing elements, it will be your duty to find the defendant, RICHARD ANDREW LEE, guilty of the crime of Murder in the First Degree."

"INSTRUCTION No. 14

"Under the laws of this State every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or

There is no evidence to support even an inference that this defendant knew the sodomy was contemplated or committed and, in fact, may not have known of its occurrence until sometime after the killing. While he is entitled to have an instruction upon his theory of the case, he is not entitled to have his argument made by the trial court in its instructions. *Laudermilk v. Carpenter*, 78 Wn.2d 92, 457 P.2d 1004 (1969). Considering the instructions, as a whole, defendant was not prejudiced by the failure of the court to give his proposed instruction No. 31.

b. The inference in defendant's brief that he was entitled to an instruction on the elements of second-degree murder, arising out of the acts of sodomy, is not well taken for four reasons: (1) the defendant was not charged with that offense; (2) it is not a lesser included offense within the charge of robbery-murder; (3) there is no evidence that the defendant aided and abetted the commission of such crime; and (4) counsel did not prepare such an instruction. *State v. Roybal*, 82 Wn.2d 577, 583, 512 P.2d 718 (1973); *cf.* Koenig, *The Many-Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Detroit College L. Rev. 41 (1975); F. Wharton, *Homicide* §

---

absent, and every person who directly or indirectly counsels, encourages, induces or otherwise procures another person to commit a crime, is a principal and shall be proceeded against and punished as such.

"In this action, the aiding and abetting or encouragement which will render one a principal may be by acts or words but it must, to create guilt, be done with an intent to aid, abet or encourage the commission of the crime. There must be some form of overt act, the doing of something that either directly or indirectly contributes to the criminal act, some form or demonstration or expression of affirmative action and not merely approval or acquiescence.

"Where two or more persons engage in a common criminal escapade, and all are immediately present at the scene of a crime, the acts of one are the acts of each of the others.

"In order to prosecute an alleged aider and abettor, as a principal, it must be shown that he is in some way connected with the one actually committing the crime by knowingly assisting in perpetrating it and sharing in the criminal intent.

" 'Abet' implies a consciousness and awareness of guilt in instigating, encouraging, promoting or aiding in the commission of the criminal offense."

118 (3d ed. 1907); R. Perkins, *Criminal Law* 37 (2d ed. 1969); 40 Am. Jur. 2d *Homicide* § 34 *et seq.* (1968).

This assignment of error is without arguable substance.

*6. Trial court erred in failing to give a cautionary instruction on the credibility of an accomplice's testimony.*

■ *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974), and *State v. Gross*, 31 Wn.2d 202, 216, 196 P.2d 297 (1948), require the giving of a cautionary instruction if the prosecutor relies upon the uncorroborated testimony of an accomplice; but as noted in *Gross*, "this rule . . . applies only where the testimony of an accomplice is uncorroborated, and not where the testimony of such witness is corroborated by other evidence in the case."

The trial court denied defendant's proposed instruction because the testimony of the accomplices had corroboration. This corroboration consisted of testimony of Steven Lee, Diane Lee, Mrs. Gunderson and Perry Chapman, relating to such facts as the participants' car being driven by Richard Lee, their departure from the Rhodes' home and their return with what develops as the property stolen from the Gunderson home, theft of a BB gun from the Gunderson home, later recovered from the Spokane River, and a battery charger found at the defendant's home.

The trial court was correct in refusing to give any of the defendant's proposed instructions relating to credibility of an accomplice.

Judgment is affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied August 12, 1975.

Review denied by Supreme Court October 7, 1975.