[No. 8138–1–I.   Division One.   July 13, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES WILLOUGHBY, *Defendant,* CARL RICHARD GARRISON, *Appellant.*

*Mark Leemon* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Douglas Whalley, Deputy,* for respondent.

JAMES, C.J.—Carl Garrison appeals his conviction for first degree robbery,[1] taking a motor vehicle without per-

---

[1] "A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) is armed with a deadly weapon; . . ." RCW 9A.56.200(1)(a).

mission, and second degree assault[2] while armed with a firearm[3] and a deadly weapon.[4]

During the afternoon of June 29, 1979, the Federal Way Capital Savings & Loan Association was robbed by a man armed with a revolver and wearing a white stocking cap which covered his face. The robber escaped in a green station wagon driven by another man who was also wearing a white stocking cap over his face.

The station wagon was subsequently identified as one stolen from the Sears employee parking lot at the Sea Tac Mall on the morning of June 29. Several Sears employees reported seeing two men in a blue car driving slowly through the parking lot. Later, one man was observed driving the blue car while another man was outside the car ducking behind parked cars in a furtive manner. The two men subsequently entered the Sears store. Two employees identified Garrison as the man observed ducking between cars. One of the employees identified Charles Willoughby as the other man. A witness also identified Garrison as the man who drove the getaway car into a parking lot near the bank where it was subsequently found by the police.

Willoughby was arrested while driving away from his residence in the blue car previously seen circling the Sears parking lot. He confessed to participation in the robbery and testified against Garrison.

Garrison first contends the trial judge erred in failing to instruct the jury concerning the nature of accomplice testi-

---

[2] A person is guilty of assault in the second degree "when he . . . [s]hall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; . . ." RCW 9A.36.020(1)(c).

[3] "Any person who shall commit or attempt to commit any felony, . . . while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned [for specified minimum terms], which sentence shall not be suspended or deferred": RCW 9.41.025(1).

[4] The Board of Prison Terms and Paroles sets minimum terms for persons "armed with a deadly weapon at the time of the commission of his offense, . . ." RCW 9.95.040(1).

mony. Such an instruction is designed to caution the jury "to subject the accomplice's testimony to careful examination and to regard it with great care and caution." *State v. Carothers,* 84 Wn.2d 256, 269, 525 P.2d 731 (1974). Garrison contends that such an instruction is mandatory whenever the State relies upon accomplice testimony, citing *State v. Calhoun,* 13 Wn. App. 644, 536 P.2d 668 (1975). We do not agree.

In *State v. Calhoun, supra* at page 648, it is held that a defendant is "entitled to a cautionary instruction unless the accomplice testimony [is] sufficiently corroborated." The opinion points out at page 648 that no such corroboration existed because "[w]ithout the testimony of accomplices Tyson or McCrary, there is *no connection* between the defendant and the crime charged" and holds that the trial judge erred by refusing to give the instruction. (Italics ours.)

A cautionary instruction is required only if the accomplice testimony is uncorroborated. *State v. Gross,* 31 Wn.2d 202, 196 P.2d 297 (1948); *State v. Calhoun, supra; State v. Lee,* 13 Wn. App. 900, 538 P.2d 538 (1975). Here, adequate corroboration of Garrison's connection with the robbery was provided by eyewitness identification of Garrison at the Sears lot and where the getaway car was abandoned. The trial judge did not err.

The State urges that an accomplice instruction as requested constitutes a prohibited judicial comment upon the evidence. Const. art. 4, § 16. The Supreme Court rejected a similar contention in *State v. Carothers, supra* at pages 267–68:

> An instruction to view the testimony of an accomplice with caution is an indication not of the judge's attitude toward the testimony of a particular witness, but of the attitude of the courts generally toward the testimony of witnesses of this type. It is an attitude which has been garnered from many years of observation of the prosecutorial process. The courts have an expertise upon this subject, which the ordinary citizen cannot be expected to have. They have observed that innocent persons may be

sent to prison or to death upon the testimony of an accomplice.

The important protective purpose served by the cautionary accomplice instruction distinguishes this instruction from somewhat comparable but disfavored instructions which either focus undue attention upon particular evidence, *State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979); *State v. Jefferson,* 11 Wn. App. 566, 524 P.2d 248 (1974) (flight instructions), or are impermissibly slanted. *State v. Jordan,* 17 Wn. App. 542, 564 P.2d 340 (1977) ("*Telfaire*" eyewitness instruction).

Garrison next contends his conviction must be reversed because the trial judge failed to instruct the jury that the deadly weapon and firearm findings must be made beyond a reasonable doubt, as required by *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980). Garrison neither requested appropriate instructions nor otherwise raised the issue at trial. We assume, without deciding, that Garrison may raise the issue for the first time on appeal, as did our Supreme Court in *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981), and *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981).

Here, as in *Hall* and *Claborn,* the error was harmless beyond a reasonable doubt. Shots were fired from the accomplice's gun. Bullet holes were found in the side panel of the bank's entryway. One of the customers, an off–duty police officer, identified the gun as a .357 magnum. The error being harmless, Garrison's conviction will not be reversed. *State v. Hall, supra; State v. Claborn, supra.*

Garrison next contends that as an unarmed accomplice, he cannot be sentenced pursuant to RCW 9.41.025 and RCW 9.95.040. He reasons that the legislature's redefinition of accomplice liability in RCW 9A.08.020[5] from punishment of an accomplice as a principal to liability of an accomplice for *crimes* committed by a principal, is inappli-

---

[5]RCW 9A.08.020(1) provides:

"A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable."

Former RCW 9.01.030 provided:

cable to RCW 9.41.025 and RCW 9.95.040, which do not create substantive *crimes. State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972); *State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974). Garrison would distinguish decisions prior to the enactment of RCW 9A.08.020, holding that an unarmed aider and abettor could be deemed armed with a deadly weapon or firearm. *State v. Willis,* 5 Wn. App. 441, 487 P.2d 648 (1971); *State v. Briggins,* 11 Wn. App. 687, 524 P.2d 496 (1974).

■ We do not find this to be the effect of the statutory change. In both statutes, the legislature manifested its determination that an accomplice is equally culpable with a principal. As this court stated in *State v. Silvernail,* 25 Wn. App. 185, 192–93, 605 P.2d 1279 (1980):

> *Willis* was also premised on the observation that the intent of the deadly weapon and firearm statutes applies with equal force to all participants in a crime. We believe this reasoning to be sound because the danger to human life is at least as great when several participants decide to use a deadly weapon.

(Footnote omitted.) We adhere to both the reasoning in and holding of *Silvernail*—that an unarmed accomplice of an armed principal may be sentenced pursuant to RCW 9.41.025 and RCW 9.95.040.

■ Relying upon *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), Garrison contends that he cannot be convicted of second degree assault and also sentenced pursuant to the firearm statute, RCW 9.41.025. We do not agree. *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), expressly rejects this contention. Although these two decisions appear to create a somewhat anomalous situation in which a defendant may be punished more severely when convicted of second degree assault than when convicted of first degree assault, our Supreme Court has declined to

---

"Every person concerned in the commission of a felony, . . . whether he directly commits the act constituting the offense, or aids or abets in its commission, . . . is a principal, and shall be proceeded against and punished as such." Laws of 1909, ch. 249, § 8, p. 892 (repealed effective July 1, 1976).

reconsider either *Workman* or *Foster. State v. Stephens,* 93 Wn.2d 186, 191, 607 P.2d 304 (1980).

Garrison further contends that application of the deadly weapon statute, RCW 9.95.040, to a defendant convicted of offenses where use of a firearm or deadly weapon is an element of the underlying offense is also inconsistent with the rationale of *State v. Workman.* He also contends that this result offends constitutional protections against double jeopardy. We do not agree.

█ The propriety of such sentencing was expressly approved in *State v. Workman, supra. Accord, State v. Walker,* 23 Wn. App. 618, 597 P.2d 453 (1979); *State v. Loux,* 24 Wn. App. 545, 604 P.2d 177 (1979); *State v. Chervenell,* 28 Wn. App. 805, 626 P.2d 530 (1981); *State v. Hayden,* 28 Wn. App. 935, 627 P.2d 973 (1981). The special verdicts do not create a multiple punishment for the same offense because RCW 9.95.040 and RCW 9.41.025 "do not in themselves create criminal offenses. They merely limit the discretion of the trial court and the Board of Prison Terms and Paroles in the setting of minimum sentences." (Footnote omitted.) *State v. Claborn, supra* at 637. *Accord, State v. Foster, supra* (as to RCW 9.41.025).

Garrison finally contends that his sentence must be vacated because the general and special verdicts were not properly filed. Although the verdict forms either were not filed or were misfiled, a judgment was duly filed which identifies all charges against Garrison, states the jury's verdict, adjudges him guilty of all crimes charged and recites that special weapons findings under RCW 9.95.040 and RCW 9.41.025 were made by the jury. Garrison does not claim that the jury did not return the general and special verdicts to which the judgment refers.

Garrison relies upon RCW 10.01.060, which provides:

> No person informed against or indicted for a crime shall be convicted thereof, unless . . . by the verdict of a jury, accepted and recorded by the court: . . .

A judgment is entered or recorded only when the document is filed for public inspection in the clerk's office. *Malott v. Randall,* 83 Wn.2d 259, 517 P.2d 605 (1974) (civil cases). *See State v. Petrich,* 94 Wn.2d 291, 616 P.2d 1219 (1980) (criminal cases). Garrison contends that a comparable rule must apply to verdict forms. We do not agree.

■ The jury's verdict is its finding of the facts. 46 Am. Jur. 2d *Judgments* § 4 (1969). However,

> A judgment is the determination or sentence of the law, pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon matters submitted for its decision, a legal duty or liability does or does not exist. *State v. Siglea,* 196 Wash. 283, 82 P. (2d) 583; *State v. King,* 18 Wn. (2d) 747, 140 P. (2d) 283.

*In re Clark,* 24 Wn.2d 105, 110, 163 P.2d 577 (1945). *See generally* 46 Am. Jur. 2d *Judgments* §§ 4, 8 (1969). Further, there is no judgment in a criminal case until sentence is pronounced. *In re Clark, supra; State v. King,* 18 Wn.2d 747, 140 P.2d 283 (1943); *State v. Siglea,* 196 Wash. 283, 82 P.2d 583 (1938). The failure to file a judgment and sentence means there has been no final adjudication of a case, *Malott v. Randall, supra; Thompson v. Seattle Park Co.,* 94 Wash. 539, 162 P. 994 (1917); the failure to file verdict forms has no such effect.[6]

We conclude that a jury verdict is "recorded" within the meaning of RCW 10.01.060 when a judgment and sentence which recites that proper verdicts were rendered by the jury is duly filed, absent some credible contention that no such verdicts were rendered by the jury.

---

[6]This difference is reflected in our statutes and court rules. RCW 10.64.100 directs the clerk of the court to make a final record in all criminal prosecutions which must include the judgment; the statute makes no express reference to the verdict forms. CrR 7.3 requires that the judgment be signed by the judge and entered by the clerk, although no such specific directive is applied to recording of verdict forms. CrR 6.16.

836

The judgment is affirmed.

Swanson and Williams, JJ., concur.

Reconsideration denied September 10, 1981.

Review denied by Supreme Court November 20, 1981.