[No. 21964. Department Two. January 28, 1930.]

WALTER I. GARRETT, *Respondent*, v. JOHN A. BYERLY
et al., *Appellants.*[1]

[1]Reported in 284 Pac. 343.

*Whittemore & Truscott,* for appellants.
*Fisk & McCarthy,* for respondent.

FULLERTON, J.—The respondent Garrett, while driving his automobile across intersecting streets in the city of Longview, was run into by an automobile driven by a person for whose negligent acts one Oliver Byerly was liable. He brought the present action against Byerly to recover for personal injuries and for injuries to his automobile caused by the collision.

After the issues between the parties had been joined, the action was tried before the court sitting with a jury, and resulted in a verdict in favor of the respondent in the sum of $2,500. Within the statutory time after the return of the verdict, and before judgment had been entered thereon, Byerly, through his attorneys, moved for judgment in his favor notwithstanding the verdict, and, in the alternative, for a new trial. These motions were argued and submitted to the court on December 15, 1928, at which time the court took the questions under advisement, and on January 11, 1929, entered an order overruling each of the motions.

It was shortly thereafter made to appear to the court that the defendant Byerly had died on January 6, 1929, and, based on this fact, his former counsel appeared and moved the court to abate the action, basing the motion on the ground that the action did not survive the death of the defendant. The respondent also appeared, and moved the court to enter a judgment on the verdict as of a date preceding the death of the defendant. These motions were heard together, at which

time the court overruled the motion to abate the action and granted that of the respondent; entering a judgment as of the date of December 15, 1928, the date on which the motions for judgment notwithstanding the verdict and for a new trial were submitted and taken under advisement. Subsequently, John A. Byerly and Oliver L. Byerly were appointed executors of the deceased Byerly's estate, and were substituted as parties defendant in the action. The appeal before us is by the executors.

The appellants, in their printed arguments, have given a large space to the question whether an action *ex delicto* abates on the death of the person guilty of the delict, due possibly to a statement made by the trial court when passing upon the several motions made by the parties subsequent to the return of the verdict. But, since the respondent concedes that the death of the defendant so far abated the action and prevented a judgment therein as of a date after his death, we do not feel that we need discuss the question.

The questions presented by the appeal on which the parties are at issue are, first, whether the court has, in any case, jurisdiction to enter a judgment as of a date anterior to that on which it was in fact rendered; and, second, whether, if it has such jurisdiction, the present case presents a proper instance for its exercise.

Our statutes do not directly confer on the courts power to enter a judgment *nunc pro tunc*. They do, however, provide (Rem. Comp. Stat., § 143) that:

"The common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state."

Construing this statute, we have held that the term "common law," as therein used, includes not only the unwritten law of England as it was administered by its courts, but also the general statutes of that commonwealth modifying and interpreting the unwritten laws which were enacted prior to and in force at the time of our Declaration of Independence. *Wagner v. Law,* 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784; *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961; *Richards v. Redelsheimer,* 36 Wash. 325, 78 Pac. 934.

Nor has our attention been called to any case where we have authoritatively determined whether the court has power to enter a judgment *nunc pro tunc,* although we have a number wherein the matter has been referred to, and others in which the power has been exercised in a limited degree. In *Puget Sound Agricultural Co. v. Pierce County,* 1 Wash. Terr. 75, it was held that the court was without power to enter, as of a past term of the court, a decree rendered in vacation, even with the consent of the parties. It was not there determined that the court was without inherent power, under any circumstances, to enter a judgment *nunc pro tunc,* but it was pointed out that the statute did not confer such power, and some of the inconveniences of such a practice were discussed. There is no doubt that the case was correctly decided, although possibly it could have been better rested on different grounds.

In *Hays v. Miller,* 1 Wash. Terr. 143, the power was recognized, but it was held that to permit it in that instance would work an injustice on innocent parties; the court saying that such judgments were entered "to answer the purposes of justice, but never to do injustice."

The question again arose in the territorial court in

the case of *Hale v. Finch,* 1 Wash. Terr. 517. The application was denied because the court thought the circumstances did not present a proper instance for its exercise, although the court said that it entertained

". . . no doubt of the power of the district court during term to direct the entry of a judgment *nunc pro tunc,* . . ."

The question seems to have arisen in the state court for the first time in the case of *Sears v. Kilbourne,* 28 Wash. 194, 68 Pac. 450. Sears had, in a prior action, recovered a judgment against the Seattle Street Railway Company, from which judgment the railway company appealed, giving a supersedeas bond. This court affirmed the judgment and entered a judgment against the sureties on the bond for the amount of the judgment. It was afterwards discovered that the judgment was in excess of the obligation assumed by the sureties, and on motion we set aside the judgment and directed a new one to be entered for the proper amount as of the date of the earlier judgment.

Sears, in the cited case (*Sears v. Kilbourne*), sought to revive the judgment against the sureties. The application to revive was objected to on the ground that it was not made within the statutory time, and this question depended on the further question whether the judgment became effective as of the date the court ordered the judgment to be entered or as of the date the court made the corrective order. We held that the judgment became effective from the earlier date, and affirmed the judgment of the trial court which denied the right to revive the judgment, saying that the court had power to antedate its orders, and power in "certain well defined cases" to direct a judgment *nunc pro tunc.* To the same effect is *Barthrop v. Tucker,* 29 Wash. 666, 70 Pac. 120.

The question again arose in *Aetna Insurance Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105, where we held, without discussing the power of the superior court to enter a judgment *nunc pro tunc,* that the facts did not present a proper instance for its exercise.

In *Schulze v. Oregon R. & Nav. Co.,* 41 Wash. 614, 84 Pac. 587, we held that, where a part of the defendants are dismissed from an action before judgment and a judgment is entered against them inadvertently, the judgment could be corrected by an order entered *nunc pro tunc.*

In *Furman v. Bon Marche,* 71 Wash. 238, 128 Pac. 210, we held that, where no formal judgment was entered at a time when a plaintiff took a voluntary dismissal of his action, the omission could be corrected by a judgment entered *nunc pro tunc.*

But, while the foregoing cases may not be authoritative as judicial precedents for the rule that the courts of this state have power to enter a judgment *nunc pro tunc* in a case such as is here presented, where there has been no judgment in the lifetime of the party and where the action will abate if a judgment may not be entered *nunc pro tunc,* they, in our opinion, rather support than deny the power. Certainly they do not sustain the contention of the appellant that no such power exists.

Turning to the English decisions and to the decisions of our sister states in which the common law has been adopted as the rule of decision by statute or by common consent, the decisions, with substantial uniformity, hold that the courts have inherent power to enter a judgment *nunc pro tunc.* The cases so holding are many, but it is unnecessary to collect them here. They will be found collected and analyzed in the note to the case of *In re Pillsbury's Estate,* 175 Cal. 454, 166 Pac. 11, 3 A. L. R. 1396; *l. c.* 1403 *et seq.*

■ The principle of the statute of 17 Car. II, chap. 8, § 1, also has a bearing under the rule to which we have hereinbefore called attention. It specifically provides:

"That in all actions, personal, real or mixed, the death of either party between the verdict and the judgment shall not hereafter be alleged for error, so as such judgment be entered within two terms after such verdict."

The force and effect of the statute will be more apparent when it is remembered that at common law all actions, whether real, personal or mixed, abated on the death of a sole party to a cause.

The foregoing considerations lead to the conclusion that the courts of this state have power to enter a judgment operative *nunc pro tunc,* and it remains to inquire whether the case before us presents a proper instance for the exercise of the power. The courts recognizing and applying the principle have somewhat narrowed its limitations. One of such limitations, and perhaps the most common one, is that the cause at the time of such death must be ripe for judgment. Another is that the delay in entering judgment must not have been caused by the party applying for the judgment, and still another, finding sanction in our own decisions, is that the judgment must not injuriously affect the subsequently acquired rights of innocent third persons.

But it is uniformly held that delays caused by the party whose death occurs after verdict and before judgment will not affect the right to such a judgment; as, for example, where he moves for judgment notwithstanding the verdict, moves in arrest of judgment, or moves for a new trial, and dies pending a hearing on the motion. So, also, delays caused by the court will not defeat the right to a judgment *nunc pro tunc,* as

where the court takes a motion under advisement and a party dies pending a decision. A case pertinent to many of the propositions above noticed is the oft-cited case of *Fitzgerald v. Stewart,* 53 Pa. St. 343. There, this language was used:

"Undoubtedly an action for slander abates on the death of the plaintiff. But when the plaintiff in this case died, she had recovered a verdict, and she was entitled to a judgment. That she had not obtained her judgment was due to the court's having taken time to consider the defendant's motion for a new trial, a motion which subsequently appeared to be without merit. Why, then, could not the court compensate for its own delay, and do justice, by entering a judgment as of the date when the plaintiff was entitled to it? Why should the defendant be permitted to reap a benefit from her own dilatory and groundless motion? The argument is that the suit died with the plaintiff, and that the court had no power to resuscitate it. This, at best, would be but a very refined technicality, and employed to defeat justice. It finds no support, however, even in the strictest technical rules. At common law the death of either a sole plaintiff or defendant, in any case, abated the suit; yet, if, after verdict, either party died in vacation, judgment could be entered that vacation as of the preceding term, and it would be a good judgment, as of that preceding term. The death of the party did not abate the suit in any such sense as to render the court powerless to enter a judgment to take effect from a day prior to the death. So, if either party died after a special verdict, and pending the time taken for argument or advisement thereon, or on a motion in arrest of judgment, or for a new trial, judgment could be entered at common law after his death as of the term in which the postea was returnable, or judgment would otherwise have been given *nunc pro tunc,* that the delay arising from the act of the court might not turn to the prejudice of the party: Tidd's Practice 846-7. Personal actions now do not die with the person any more completely than all actions did at common law. There is, and there always has been,

in the courts, a common-law power to enter judgment *nunc pro tunc,* at their discretion, regulated, it is true, by certain rules.''

In *Mitchell v. Overman,* 103 U. S. 62, it is said:

''The adjudged cases are very numerous in which have been considered the .circumstances under which courts may properly enter a judgment or a decree as of a date anterior to that on which it was in fact rendered. It is unnecessary to present an analysis of them, some of which are cited in a note to this opinion. We content ourselves with saying that the rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiae neminem gravabit,*—which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice,— it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case. These principles control the present case. Stutzman was alive when it was argued and submitted. He was entitled at that time, or at the term of submission, to claim its final disposition. A decree was not then entered because the case, after argument, was taken under advisement. The delay was altogether the act of the court. Its duty was to order a decree *nunc pro tunc,* so as to avoid entering an erroneous decree.''

Other supporting cases will be found in the note above cited from the American Law Reports. But further discussion or citation is unnecessary. Reason as well as authority sustain the rule applied by the trial court.

At appropriate times during the course of the trial of the action, the defendant, Byerly, interposed challenges to the sufficiency of the evidence, and after the return of the verdict, moved for judgment notwithstanding the verdict. The appellants contend that some one of these challenges should have been sustained. The challenges to the evidence were based on the contentions that no negligence on the part of the defendant was shown, and that the plaintiff was himself guilty of negligence.

The collision causing the injuries occurred at the intersection of Twentieth avenue and Louisiana street in the city of Longview, each being a public highway of that city. Twentieth avenue extends north and south, and Louisiana street east and west. The defendant's car was being driven north on the avenue and the plaintiff's car east on the street. There was evidence from which the jury could well find that the defendant's car was being driven in the center of the highway at an excessive rate of speed, at least at a speed in excess of that fixed by the statute, and these acts alone are sufficient to warrant a finding that it was operated negligently.

The principal question therefore is, whether it can be said that the plaintiff was himself guilty of negligence. There was no evidence that he was exceeding the speed limit, or that he was otherwise violating the rules of the road as to his manner of driving, but the plaintiff's car was approaching the intersection on the left of the defendant's car, and it was the duty of the plaintiff to look out for and give the right of way to the driver of the defendant's car if the cars were simultaneously approaching a given point within the intersection. Rem. 1927 Sup., § 6362-41, subd. 14.

The statute does not undertake to define the conditions that will constitute a simultaneous approach,

but since it prescribes the speed at which vehicles may be driven prior to and at the time of crossing intersecting highways, and prescribes the side of the road on which the vehicles must be driven when so approaching and crossing, it would seem clear that it contemplates a situation where the drivers of the vehicles are driving on the prescribed side of the road and within the prescribed speed limit. Stated conversely, vehicles are not simultaneously approaching a given point within the meaning of the statute when one or both are being driven in violation of the statutory regulations.

In this instance, it was only the defendant's car that was being so driven, and if the plaintiff is to be held guilty of negligence, as matter of law, it must be for some other reason than the statutory regulation requiring him to give the right of way to the car approaching on his right. In other words, he must have been guilty of some act which would be negligence under any and all circumstances and prevent a recovery on his part regardless of the statutory regulation. The evidence, as we read it, does not disclose such an act.

The plaintiff approached and started to cross the intersection, traveling well within the speed limit. He was driving on his right side of the highway. Before entering the intersection, he looked to his right and saw no traffic approaching. At that time he could see sufficiently far down the street to discover that no approaching traffic could interfere with him if it approached at a lawful speed. While he gave no further look and did not discover the approach of the defendant's car until it was upon him, it would be too much to say, under these circumstances, that he was guilty of negligence as a matter of law. As we said in *Ellis v. Olson,* 139 Wash. 351, 246 Pac. 944:

"The appellant's principal contention, if we have

correctly gathered his argument, is that the driver of the automobile owned by the respondents was guilty of contributory negligence, as a matter of law, in crossing the intersection without again looking in the direction from which the appellant's car was approaching. We think, however, that the question was one of fact for the jury, and not one of law for the court. If the evidence offered on behalf of the respondents was accepted by the jury, as apparently it was, their car entered the intersection first and had ample time to cross, had the on-coming car been approaching at a lawful rate of speed.''

So, as we said in *Keller v. Waddington*, 142 Wash. 474, 253 Pac. 646:

''The next contention is that the respondent was guilty of such contributory negligence as will prevent a recovery. It is argued that the parties were simultaneously approaching a given point, that the respondent was on the left of the appellant, and that, under the provisions of the statute, it was his duty to look out for the appellant's car and give it the right of way, which he did not do. But we cannot concede that the situation here presented is the situation contemplated by the statute. While the respective drivers of the automobiles were approaching a given point, they were not simultaneously approaching the point. The appellant was well down the avenue towards the next intersecting street when the respondent started over the intersection, and in our opinion the record very conclusively shows that he had ample time to cross entirely over the intersection before the appellant reached him, and would have so crossed over had the appellant driven his automobile within the statutory speed limit.''

See, also, *McHugh v. Mason*, 154 Wash. 572, 283 Pac. 184.

Finally, the appellants contend that the court erred in submitting to the jury the question whether the plaintiff had, as a result of the action, sustained permanent injuries; the argument being that there was

no evidence on which to base a conclusion that the plaintiff had suffered such an injury. But we think it unnecessary to detail the evidence on this branch of the case. In our opinion, there was evidence from which the jury could well find that certain of the injuries are of a permanent nature; that is, permanent in the sense that there may not be a complete recovery, though possibly of such a nature that they will gradually improve with the lapse of time. The verdict of the jury, moreover, indicates that they were not misled by the instruction. The amount of their verdict was very moderate when compared with verdicts usually returned for injuries even less severe.

The judgment is affirmed.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.