100

[No. 5607–1.  Division One.  August 14, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. KURT
KONRAD PETRICH, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Charles S. Hamilton III, Deputy,* for appellant.

*Laurence B. Finegold,* for respondent.

SWANSON, J.—Kurt Konrad Petrich was convicted of assault in the second degree. The State now appeals the dismissal of the mandatory sentencing provisions of RCW 9.95.040 and 9.41.025 (deadly weapon and firearm allegations)[1] contending the trial judge lacked authority to so act. Petrich argues the State's appeal is untimely and cross–appeals, contending error regarding a self–defense claim and the sufficiency of evidence. We agree with the State, reverse the trial court, and dismiss Petrich's cross appeal.

Petrich and his fiancee, Colleen Ingram, were leaving a dance at the Legion Hall in Renton, Washington, between 12:30 and 1:30 a.m., April 11, 1976, when they were observed embracing by Michael Hill, age 16, and Nina Hayes, age 15. Hill and Hayes mistook the couple to be

---

[1] RCW 9.95.040 provides in pertinent part:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years."

RCW 9.41.025 provides in pertinent part:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;"

male homosexuals and decided to follow them. As the Petrich–Ingram vehicle, driven by Ingram, proceeded the 12 miles toward the couple's trailer home in Stillwater, Washington, Hill intermittently flashed his high–beam headlights, drew close behind, and in other ways harassed the couple. Speeds as high as 65 to 70 miles per hour were estimated on poorly lit country roads. Upon reaching Stillwater, Ingram pulled to the side of the road. Petrich exited the vehicle, obtained his pistol from his trailer, and returned to the roadside. Hill meanwhile passed the parked vehicle and stopped farther down the road. Hill then returned toward Petrich, at which time Petrich aimed the pistol and fired the weapon hitting Hill in the arm. Petrich and Ingram called the police and notified them of the incident.

At the nonjury trial, the judge concluded that Petrich had "overreacted and used excessive force," finding him guilty of assault in the second degree. Finding of fact No. 11. The judge was convinced, however, that "the incident would not have occurred but for the misbehavior of Michael Hill in his efforts to follow unnecessarily and annoyingly the accused and his fiancee . . ." Finding of fact No. 11. The trial judge therefore dismissed the deadly weapon and firearm mandatory sentencing provisions pursuant to CrR 8.3, believing such to be "in the furtherance of justice" and the alternative to be cruel and unusual punishment. Conclusion of law No. 1.

Initially, we must consider the timeliness of the State's appeal. The trial court orally pronounced sentence on April 1, 1977, at which time Petrich was advised he had 30 days in which to file an appeal. On April 14, 1977, the State presented, and the judge signed, an "Order Deferring Imposition of Sentence (Probation)" which by agreement of the parties was to be entered nunc pro tunc, effective April 1, 1977. The order actually dismissing the deadly weapon and firearm mandatory sentencing provisions was not entered

until April 25, 1977, due to disagreement between the parties over appropriate findings of fact. The State filed this appeal on May 16, 1977.

Petrich argues that April 1, 1977, was the operative date from whence the 30–day appeal period ran due to the nunc pro tunc order drafted by the State relating the sentencing order back to that date. Were that so, the appeal would be untimely. RAP 5.2(a)(1). Such cannot be the case, however. The State's appeal is from the order dismissing the mandatory sentencing provisions as entered April 25, 1977. Although the trial judge's oral pronouncement of sentence on April 1, 1977, and the sentencing order of April 14, 1977, reflected his decision regarding the mandatory sentencing provision, that decision was not properly appealable until a final order was entered. As stated in *Malott v. Randall,* 83 Wn.2d 259, 261, 517 P.2d 605 (1974):

> There is a "clear distinction between the making or rendering of a judgment and its entry." *Quareles v. Seattle,* 26 Wash. 226, 227, 66 P. 389 (1901). As we have long recognized, "the formal signing is the direction of the court to enter the judgment, which becomes such when it is received by the clerk and filed by him." *Thompson v. Seattle Park Co.,* 94 Wash. 539, 540, 162 P. 994 (1917).
>
> Significant legal consequences flow from this distinction. This court has gone so far as to allow a court to withdraw a signed order of dismissal where it had not been formally entered by the clerk. *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 P. 86 (1903). As recently as *Grip v. Buffelen Woodworking Co.,* 73 Wn.2d 219, 224, 437 P.2d 915 (1968), this court said in a different context: "An appeal does not lie from anything other than a formal written final order or judgment signed by the judge and entered upon the records of the court, unless authorized by statute."

The sentencing order of April 14, 1977, contained a recital that the judge was acting "having ordered dismissal of the deadly weapon and firearm provisions pursuant to CrR 8.3." As a formal dismissal order had not yet been entered,

the nunc pro tunc nature of the sentencing order is immaterial to the timeliness of this appeal. The propriety of a nunc pro tunc judgment affecting the right of appeal in a criminal case is, therefore, not before us. The appeal is timely.

■ The State contends the trial court lacked authority under CrR 8.3(b) to dismiss the mandatory sentencing provisions. CrR 8.3(b) provides:

> The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.

The State first argues that the decision in *State v. Starrish*, 86 Wn.2d 200, 203, 544 P.2d 1 (1975), controls; thus, a CrR 8.3(b) dismissal would be appropriate only where the record demonstrates governmental misconduct or arbitrary action. The record herein does not reflect any such behavior. The State also argues that a deadly weapon and/or firearm allegation does not constitute a criminal prosecution; thus, such do not fall within the ambit of CrR 8.3(b) discretion. We do not reach the issue of whether the *Starrish* doctrine should be applied beyond its specific setting, for we find the State's second contention dispositive. The mandatory sentencing provisions of RCW 9.95.040 and 9.41.025 are designed to increase punishments for substantive crimes and do not constitute independent criminal prosecutions.

Petrich states correctly, however, that the *Starrish* court found a habitual criminal proceeding to be a criminal prosecution and argues that deadly weapon and firearm allegations are analogous. The *Starrish* court reasoned, at page 203:

> Although the habitual criminal proceeding does not create or involve a distinct substantive offense, it amplifies or enhances the criminal prosecution, *i.e.*, penalization, arising out of the underlying felony. It is innately a special type of "criminal prosecution." It is commenced by the filing of a supplemental information; and the accused has a right to trial by jury to determine whether there were previous convictions and whether the accused was

the subject of those convictions. Ultimately, the proceeding may result in increased incarceration.

(Footnotes omitted.) A habitual criminal proceeding is quite distinct from the procedure surrounding punishment under RCW 9.95.040 and 9.41.025. Whereas the recidivist statute requires a separate trial for the proof of previous convictions, the mandatory sentencing provisions require only that the use of a deadly weapon or firearm be pleaded and proved as an element at the trial of the substantive crime. The procedural rights emphasized in *Starrish* in a discussion of a habitual criminal proceeding simply do not inure to one accused of the commission of a felony with a deadly weapon or a firearm. Thus, *Starrish* does not control herein.

Numerous decisions have denied trial courts the discretion to attempt to avoid the potential harshness of mandatory sentencing. Thus, in *State v. Thompson,* 88 Wn.2d 60, 558 P.2d 245 (1977), the trial court determined as a finding of fact that a defendant was not armed with a deadly weapon although he was convicted of assault after pointing a rifle in the direction of a policeman. The Supreme Court held the finding contrary to the evidence and thus a manifest abuse of discretion, concluding:

> We recognize the action of the trial court was what it considered to be "in the interest of justice." The court believed the mandatory 5–year minimum prison sentence to be too severe considering the circumstances of the crime and the character of the defendant. Nevertheless, the statutory scheme providing for enhancement of punishment for felonies where a deadly weapon has been used is well established in this state.

*State v. Thompson, supra* at 62–63.

The court in *State v. Pringle,* 83 Wn.2d 188, 517 P.2d 192 (1973), reversed a sentencing judge who struck a firearm allegation from an information to which the accused had pleaded guilty. The court held the predecessor statute of CrR 8.3(b) "relates to the dismissal of a 'criminal prosecution' and in no way authorizes a sentencing judge to

modify a criminal information after the conclusion of the prosecution and after a valid plea of guilty has been entered." *Pringle* at 190. *See also State v. Thornton,* 9 Wn. App. 699, 702, 514 P.2d 179 (1973) (wherein the court held "[t]he trier of the fact must make the finding or return the verdict if there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime. The performance of the function is mandatory upon the court."); *State v. Frazier,* 81 Wn.2d 628, 634, 503 P.2d 1073 (1972).

■ We agree with the spirit of these decisions. We cannot ignore the supplemental nature of deadly weapon and firearm allegations to permit a trial judge acting under CrR 8.3(b) to avert the clear legislative requirement of mandatory sentencing. Nor do these provisions constitute cruel and unusual punishment. *State v. Bruce,* 19 Wn. App. 392, 396–97, 576 P.2d 1324 (1978); *State v. Atkinson,* 19 Wn. App. 107, 114, 575 P.2d 240 (1978).

Following the filing of the State's appeal of the order dismissing the deadly weapon and firearm allegations, Petrich filed a cross appeal on May 23, 1977, in which he contested his conviction.[2] From a lengthy and emotional brief we culled the following issues appropriate for review: (1) Was there sufficient evidence of intent to warrant a conviction of assault? (2) Did the trial judge properly consider a claim of self–defense? (3) Did the State carry its burden of disproving self–defense? Other discussion involving the nature of the actions of the victims has no bearing on the trial of Petrich.

■ In arguing that insufficient evidence was presented to prove the necessary element of intent, Petrich ignores the testimony of the State's witnesses, relying solely on testimony favorable to his position. Upon review we cannot

---

[2]Technically, Petrich's appeal of his conviction does not fall within the parameter of RAP 5.2(f), as the "decision" appealed by the State was separate and distinct from the guilty verdict. Thus, by the 30–day rule Petrich's appeal is tardy, the order of conviction having been filed April 15, 1977. In view of the equities involved, however, we choose to discuss briefly the questions raised.

reevaluate the credibility of the witnesses, *State v. Ross,* 7 Wn. App. 62, 63, 497 P.2d 1343, 53 A.L.R.3d 997 (1972), but must draw all reasonable inferences in favor of the State. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977). The record demonstrates the trial judge gave credence to testimony of the victim and a neutral party regarding the posture and motions of Petrich prior to the shot being fired. This testimony supports finding of fact No. 8 which in turn supports conclusions of law Nos. 3 and 4. We will not disturb such finding and conclusions.

The trial judge concluded that the force used by Petrich was excessive and thus refused to credit a claim of self-defense. *See State v. Hill,* 76 Wn.2d 557, 564, 458 P.2d 171 (1969); RCW 9.11.040 (repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010, effective July 1, 1976). Petrich argues the judge failed to consider all motivating circumstances, particularly his knowledge of the "reputation of lawlessness" in the area, and erroneously applied a standard of reasonableness to the facts as viewed at trial, rather than as viewed by Petrich at the time of the occurrence. These contentions are not well taken. Petrich's testimony of the occurrence characterized the shot as accidental; thus, the firing of the pistol (the assault) was not motivated by any perceived reputation of lawlessness in the area. Nor do we find the argument regarding the perspective of the trial judge persuasive. Petrich cites only one statement from the record, "I think [the force used] was too much here," to support his contention. The case authority offered speaks only to jury instructions. *State v. Dunning,* 8 Wn. App. 340, 506 P.2d 321 (1973). In a trial without a jury it would demean the abilities of the trial judge, who clearly sympathized with Petrich, to find on review an erroneous application of established law through such a semantic argument.

The same problem arises with the contention that the State failed to disprove the self-defense claim. The case cited by Petrich speaks to appropriate jury instructions in this area of the law. *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). The record reflects sufficient evidence by

108

which the trial judge properly could arrive at his findings. The conviction must stand.

We are quite cognizant of the emotional tenor of this case and the feeling of both the trial judge and counsel that a mandatory sentence will prove unduly harsh in light of the circumstances of the incident. The judiciary cannot, however, usurp the function of the legislature which has spoken clearly in this area through RCW 9.95.040 and 9.41-.025. We note the legislature has provided potential relief from service of a full 5–year minimum sentence in RCW 9.95.040. *See State v. Thornton, supra* at 706–07.

Reversed and remanded for sentencing consistent with this opinion.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied December 20, 1978.

Review granted by Supreme Court April 20, 1979.