# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STACEY DEFOOR, | ) | NOS. 67457-9-I |
| | ) | 67458-7-I |
| Respondent, | ) | (Consolidated Cases) |
| v. | ) | |
| | ) | DIVISION ONE |
| TERRY DEFOOR, | ) | |
| | ) | |
| _____Appellant._____ | ) | |
| | ) | |
| TERRY DEFOOR and GWC, INC.; | ) | |
| MERRILEE A. MACLEAN, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
| Appellants, | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | FILED: March 18, 2013 |
| STACEY DEFOOR, | ) | |
| | ) | |
| _____Respondent._____ | ) | |

LAU, J. — In these consolidated appeals, Terry Defoor, his closely held corporation G.W.C. Inc. and Merrilee A. MacLean (chapter 7 bankruptcy trustee for Terry's estate)[1] appeal the trial court's March 2011 entry of an amended judgment nunc pro tunc by which it awarded postjudgment interest to respondent Stacey Defoor dating to the court's original November 2008 judgment. Because the trial court lacked authority to enter a nunc pro tunc judgment and erred in awarding postjudgment interest dating to its original judgment, we reverse.

_____

[1] Merrilee A. MacLean was appointed chapter 7 trustee of Terry's estate in June 2011.

## FACTS

The facts of this case were set forth in this court's previous opinion resulting from Terry Defoor's first appeal. Defoor v. Defoor, noted at 157 Wn. App. 1033, 2010 WL 3220165, at *1-4 (2010) (Defoor I). We repeat only the facts necessary to resolve this second appeal.

Terry and Stacey Defoor[2] married in 1987 and divorced in 1992. They soon reconciled but never remarried. The couple lived together until their relationship ended on September 20, 2006. Stacey petitioned for an equitable property distribution under the committed intimate relationship doctrine.

The trial court entered written findings of fact and conclusions of law in September 2008. It concluded that all of Terry and Stacey's assets as of September 20, 2006, were subject to a just and equitable distribution under the committed intimate relationship doctrine. The trial court noted that to the extent uncertainty existed regarding the value of the parties' assets, the equities lay in support of making inferences in Stacey's favor.

The trial court awarded both Terry and Stacey a list of specific assets that it valued at $4,533,282 each, including an equalizing cash payment of $723,652 to Stacey. The court valued a Sea-Tac property at $1,625,000 and awarded it to Stacey. The court valued several Missouri properties at $2,660,000 and awarded them to Terry. The court also credited Terry with the $725,000 value of a promissory note for sale of a

_____

[2] For clarity, we refer to the parties by their first names.

-2-

Costa Rica condominium. In addition to the $4,533,282 in valued properties, the court awarded each party half the value in United Bank of Switzerland (UBS) account BK 0264235 as of October 31, 2007 ($992,194 each). And it awarded half of GWC's interest in pending assignment agreements with Camwest Development to Stacey through 2011, with decreasing amounts thereafter, through 2019.[3] The court allocated GWC's liabilities to Terry but also awarded him the corporation and its goodwill.

Terry appealed the court's property characterization, valuation, and distribution, and Stacey appealed the court's denial of her attorney fee request. In Defoor I, we addressed two property interests relevant to the current appeal. First, regarding the Costa Rica condominium, we concluded "the trial court erred in crediting [Terry] with the promissory note for the Costa Rica condominium in its property distribution. . . . By crediting the same funds to Terry twice, the trial court did not achieve its stated intent of an equal division of community-like assets." Defoor I at *7. We instructed the trial court on remand to allocate the value of the condominium only once. Defoor I at *7.

The second property interest was an approximately $1.6 million debt incurred on a UBS line of credit. Terry claimed that he incurred this debt to acquire the Sea-Tac property, which the trial court awarded to Stacey. Defoor I at *5. The trial court failed to clearly characterize or allocate the UBS debt. Defoor I at *5. On appeal, Terry argued that the Sea-Tac property was his separate property or, in the alternative, if it was community property, then the debt incurred to acquire the property must be treated as a community liability. Defoor I at *5. We upheld the trial court's characterization of the

---

[3] Terry and Stacey jointly owned GWC, a corporation they used to acquire interests in land that could later be subdivided for residential development. GWC often assigned its rights to development partners such as Camwest Development.

Sea-Tac property as a community-like asset and its distribution to Stacey, but regarding

the UBS line of credit debt, we concluded:

> The trial court did not include this specific debt in its list of debts or expressly address it in its factual findings. <u>Because we cannot determine from the trial court's findings and conclusions whether it allocated the debt to Terry as part of its fair and equitable property distribution, we remand for additional findings and conclusions to clarify the character and allocation of this debt</u>.

<u>Defoor</u> I at *5 (emphasis added).

Because our ruling and instruction on remand in <u>Defoor</u> I is central to our

analysis of the errors claimed here, we quote our ruling—including one of our

explanatory footnotes:

> [B]ecause the trial court improperly counted proceeds from the sale of a community-like asset twice, <u>we reverse the property distribution</u>. We also instruct the court to clarify the character and allocation of an approximately $1.6 million debt on a United Bank of Switzerland (UBS) line of credit. We reverse in part and remand for proceedings consistent with this opinion.[2]
> > [2] <u>We cannot determine from this record whether the trial court would have made the same property distribution between the parties absent these errors</u>.

<u>Defoor</u> I at *1 (emphasis added) (footnote omitted).

On September 13, 2010, we entered a notation ruling on Terry's cost bill. Stacey

had objected to Terry's cost bill, claiming he did not prevail on several issues and no

party substantially prevailed. In explaining why Terry substantially prevailed, we noted:

> Terry Defoor prevailed on his argument that the trial court credited the same funds (one half of the $725,000 proceeds of the Costa Rica condominium) to him twice in valuing funds deposited in a bank account used in the court's allocation of community cash. The panel also remanded for additional findings and conclusions to clarify the character and allocation of the [UBS] line of credit debt ($1.6 million) regarding the SeaTac property. . . . One half of $725,000 is significant, <u>and there is the potential for a large adjustment resulting from the clarification and allocation of the [UBS] line of credit debt on remand</u>.

(Emphasis added.)

-4-

On remand, Stacey moved for entry of amended judgment. She agreed that the promissory note for the Costa Rica condominium had been counted twice, and she recalculated the final money judgment. The trial court adopted her recalculation in its March 7, 2011 amended judgment and the principal judgment amount in Stacey's favor dropped from $2,223,368.60 on November 20, 2008, to $1,860,868.60 on March 7, 2011. The trial court apparently struck the portion of its original judgment that credited Terry with a $42,477.40 offset for money already paid to Stacey. The court's new judgment was entered "nunc pro tunc to November 20, 2008," meaning the court backdated its new judgment to the original judgment. As a result, Stacey was awarded postjudgment interest dating from the original November 20, 2008 judgment.

The trial court also made additional findings of fact pertaining to the UBS line of credit. The court substituted new language in paragraph 66 of its previous findings and conclusions: "With the exception of the Heritage Bank Loan and the UBS Lines of Credit, none of [the potential debts or liabilities of GWC, Inc.] are substantiated." (Emphasis added.) The court also added a new subpart (g) to Paragraph 66: "GWCA and/or GWC borrowed a total of $1,568,997.82 against [UBS] business lines of credit." In addition, the court made five other new findings pertaining to the UBS debt or lines of credit. Relevant to this appeal, the court found:

> 4. Allocating to Terry all obligations for the UBS Lines of Credit is fair and equitable.
> 5. The approximately $1.6 million obligation incurred by Terry in connection with the UBS Lines of Credit is substantially less than the value of joint assets that were retained by Terry but that the Court did not include in its awards to the parties of enumerated valued assets or in the calculation of the money judgment.

Terry moved for reconsideration of the order amending the judgment, arguing that the trial court erroneously awarded Stacey postjudgment interest nunc pro tunc. The trial court denied his motion. Terry, G.W.C., and Merrilee A. MacLean appeal.[4]

## ANALYSIS

### Award of Postjudgment Interest

Appellants contend the trial court erred in awarding postjudgment interest dating to its original November 20, 2008 judgment. They argue that March 7, 2011, is the effective date of the only judgment on which postjudgment interest can accrue.

Postjudgment interest accrues from the time of the original judgment only on those portions of the judgment that are wholly or partly affirmed on appeal. RCW 4.56.110(4); Zink v. City of Mesa, 162 Wn. App. 688, 729, 256 P.3d 384 (2011), review denied, 173 Wn.2d 1010 (2012). "When the appellate court in reversing merely modifies the award and the only action necessary on remand is application of a mandated mathematical formula, interest runs from the date of the original judgment." Zink, 162 Wn. App. at 729. "If, however, the trial court on remand must engage in fact finding or an exercise of discretion, interest runs from the new judgment." Zink, 162 Wn. App. at 730. See also Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 373, 798 P.2d 799 (1990) ("Awards reversed on review do not bear interest."); Fulle v. Boulevard Excavating, Inc., 25 Wn. App. 520, 522, 610 P.2d 387 (1980) ("Where the appellate court merely modifies the trial court award and the only action necessary in the trial court is compliance with the mandate, interest runs from the date of the original judgment. On the other hand, where an appellate court has reversed the trial court

---

[4] Stacey submitted no response brief on appeal.

judgment and directed that a new money judgment be entered, interest runs from the entry of such new judgment.") (citation omitted).

As discussed above, in Defoor I we reversed the trial court's property distribution and instructed the court to (1) allocate the value of the Costa Rica condominium only once and (2) enter additional findings and conclusions to clarify the character and allocation of the UBS debt. Defoor I at *1, *5, *7. We specifically noted that we could not determine from the record whether the trial court would have made the same property distribution absent the two errors on which Terry prevailed on appeal. Defoor I at *1 n.2. In reversing the property distribution, we did more than "merely modif[y] the award" or require "application of a mandated mathematical formula . . . ." Zink, 162 Wn. App. at 729. Rather, we required the trial court to correct its errors and omissions, enter new findings and conclusions, and clarify whether these actions required a different property distribution. This required an exercise of discretion, rather than mere computation. See Fisher Props., 115 Wn.2d at 374 (even if the trial court arrives at the same result on remand, this "does not mean that the old judgment was merely recalculated" where the appellate court "left it in the trial court's hands to determine damages" and the mandate "necessitated new findings and a new judgment . . . .").

The trial court erred in awarding postjudgment interest dating to its original judgment. We direct the court on remand to award interest from March 7, 2011—the date the new judgment was entered.

### Entry of Judgment Nunc Pro Tunc

Appellants argue that the trial court erred by entering its March 7, 2011 amended judgment nunc pro tunc to November 20, 2008. They contend the court lacked authority

-7-

to enter a nunc pro tunc order to backdate its March 2011 judgment to its original judgment.

"A nunc pro tunc order allows a court to date a record reflecting its action back to the time the action in fact occurred." State v. Hendrickson, 165 Wn.2d 474, 478, 198 P.3d 1029 (2009). A judgment nunc pro tunc may be used to record action previously taken, but it may not properly be used to alter a prior judgment. Keyes v. Dep't of Motor Vehicles, 11 Wn. App. 957, 961-62, 528 P.2d 283 (1974). In other words, a judgment nunc pro tunc is used "'to record judicial action taken and not to remedy inaction.'" Keyes, 11 Wn. App. at 961 (quoting Osborne v. Osborne, 60 Wn.2d 163, 167, 372 P.2d 538 (1962)). We review a trial court's exercise of its authority to enter a nunc pro tunc order for abuse of discretion. Hendrickson, 165 Wn.2d at 478.

In Hendrickson, our Supreme Court discussed in detail when nunc pro tunc orders are appropriate and when they are not:

> "A retroactive entry is proper only to rectify the record as to acts which did occur, not as to acts which should have occurred." [State v. Smissaert, 103 Wn. 2d 636,] 641 [694 P.2d 654 (1985)]. A nunc pro tunc order "records judicial acts done at a former time which were not then carried into the record." State v. Petrich, 94 Wn.2d 291, 296, 616 P.2d 1219 (1980). A nunc pro tunc order "may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." State v. Ryan, 146 Wash. 114, 117, 261 P. 775 (1927). Thus, for example, a nunc pro tunc order is not appropriate to reopen a matter that was previously closed in order to resolve substantive issues differently. Instead, a nunc pro tunc order is generally appropriate to correct only ministerial or clerical errors, not judicial errors. A clerical or ministerial error is one made by a clerk or other judicial or ministerial officer in writing or keeping records.
> While our case law is scant as to what differentiates a clerical error from a judicial error in the nunc pro tunc context, we have considered the distinction in discussions regarding the court rules governing relief from judgment. "In deciding whether an error is 'judicial' or 'clerical,' a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as

expressed in the record at trial." <u>Presidential Estates Apartment Assocs. v.</u>
<u>Barrett</u>, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). . . .

We apply this distinction to acts involving nunc pro tunc orders. <u>A trial</u>
<u>court misuses its nunc pro tunc power and abuses its discretion when it uses</u>
<u>such an order to change its mind or rectify a mistake of law</u>. But where the
record demonstrates that the court intended to take, and believed it was taking, a
particular action only to have that action thwarted by [u]nartful drafting, a nunc
pro tunc order stands as a means of translating the court's intention into an order.

<u>Hendrickson</u>, 165 Wn.2d at 478-79 (emphasis added) (some citations omitted).

As previously discussed, in <u>Defoor</u> I we instructed the court on remand to
allocate the value of the Costa Rica condominium only once and to clarify the character
and allocation of the UBS line of credit debt. <u>Defoor</u> I at *1, 5, 7. The trial court
complied by (1) eliminating the double counting of the promissory note and recalculating
the amount of Stacey's equalization payment and (2) making additional findings and
conclusions regarding the UBS debt. These actions went beyond recording judicial
action previously taken and, thus, are not the type of actions for which a nunc pro tunc
order is proper.[5] <u>Keyes</u>, 11 Wn. App. at 961. The trial court improperly entered its
March 7, 2011 judgment nunc pro tunc.

---

[5] While Stacey submitted no response brief on appeal, she argued below that the
record showed that in November 2008, the court intended to take and believed it was
taking the actions it later recorded in March 2011. Specifically, she argued that the
court intended to allocate the UBS debt to Terry in the original judgment, citing the
court's conclusion of law 6 ("It is just and equitable to award to [Terry] all putative and
real debts of GWC . . . .") and the court's November 2008 judgment awarding Terry "all
liabilities of G.W.C., Inc. and GWC & Associates, Inc." But as Terry argued below, the
court also allocated to Stacey the Sea-Tac property and "liabilities on real estate
awarded," and because Terry claimed to have incurred the UBS debt to acquire the
SeaTac property, the court could have intended to allocate the debt to Stacey. We
concluded in <u>Defoor</u> I that given the court's findings and conclusions, it was unclear
"whether the trial court meant to allocate to Terry the UBS line of credit debt Terry
claims he incurred to acquire the Sea-Tac property." <u>Defoor</u> I at *5. Thus, the record
fails to demonstrate "that the court intended to take, and believed it was taking, a

<u>Credits Against Judgment</u>

Terry also argues that he "made payments after the original judgment but before the new judgment" and contends that the trial court erred on remand because its "amended judgment or new judgment did not account for [his] partial satisfaction." Appellant's Br. at 9-10. As noted above, the trial court referred to a $42,477.40 credit in its November 2008 judgment but omitted that reference in its March 2011 judgment. It is unclear whether the trial court incorporated the credit in its new calculation of the award in Stacey's favor against "[Terry] and GWC, jointly and severally." The trial court is in a better position to address this issue on remand.

## CONCLUSION

The trial court lacked authority to enter a nunc pro tunc judgment and erred in awarding postjudgment interest dating to its original judgment. We reverse and remand to clarify the issue of credit payments and for further proceedings consistent with this opinion.

WE CONCUR:

---

particular action only to have that action thwarted by [u]nartful drafting." <u>Hendrickson</u>, 165 Wn.2d at 479-80. The court improperly entered its judgment nunc pro tunc.